IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRELL HALE, | No. 4:25-CV-01576 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| J. GREENE, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JANUARY 14, 2026

Plaintiff Terrell Hale filed the instant *pro se* civil rights lawsuit alleging constitutional violations by prison officials at the Federal Correctional Institution, Allenwood Low (FCI Allenwood Low), in White Deer, Pennsylvania. He asserts claims for money damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because Hale fails to state a claim for relief and granting leave to amend would be futile, the Court will dismiss this *Bivens* action with prejudice.

I.  BACKGROUND

In August 2025, Hale lodged the instant civil rights lawsuit in this Court.[1] At that time, Hale was incarcerated at FCI Allenwood Low,[2] and he filed this action pursuant to *Bivens v. Unknown Named Agents of the Federal Bureau of*

---

[1] Doc. 1.
[2] *See id.* ¶ 3.

*Narcotics*.[3] Hale has since been transferred and is currently incarcerated in FCI Ashland, located in Ashland, Kentucky.[4]

The gravamen of Hale's lawsuit concerns disciplinary proceedings at FCI Allenwood Low. On June 4, 2025, Hale was charged with a minor disciplinary infraction—Refusing to Obey an Order (Code 307) and Interfering with Staff (Code 398)—for approaching psychiatrist C. Schmidt and asking him a question when Dr. Schmidt had previously directed Hale to speak with him at "mainline."[5] The Unit Discipline Committee (UDC) determined that Hale had committed the charged offenses,[6] and it appears that he was sanctioned with the loss of phone and internet tablet privileges for six months.[7]

Hale appealed the UDC's decision and sanctions to Warden J. Greene, who affirmed the actions of the UDC.[8] Hale then appealed to the BOP's Regional Director, who found that a "thorough review of the record reveals questions concerning the disciplinary process" and accordingly expunged the offenses and related sanctions from Hale's record.[9]

---

[3] *See id.* ¶ 1.
[4] *See* Doc. 13.
[5] *See* Doc. 1-1 at 17.
[6] *See id.* at 10.
[7] Doc. 1 ¶ 13.
[8] Doc. 1-1 at 10.
[9] *Id.* at 3.

In the instant lawsuit, Hale asserts that multiple FCI Allenwood Low officials violated his constitutional rights during this flawed disciplinary process. He first alleges that defendants B. Noone and T. Noon found him guilty of the disciplinary offenses without following BOP policy or providing him the opportunity to challenge the incident report.[10] Next, he claims that Dr. Antonucci witnessed the incident involving Dr. Schmidt and refused to help Hale prove his innocence.[11] Third, he avers that defendants N. Myers, J. Mansell, and L. Getz knew that Hale's "rights were violated during the discipline process" and "did nothing about it."[12] Finally, Hale asserts that Warden Greene knew that Hale's due process rights had been violated, admitted as much directly to Hale, but refused to reverse the UDC's decision.[13]

Hale contends that Defendants' actions violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights.[14] He maintains that being held in the Special Housing Unit (SHU) while he awaited a disciplinary hearing violated the Fourth Amendment's protection against "Unreasonable Searches and Seizures."[15] According to Hale, his Fifth Amendment procedural due process rights were violated when he was deprived of his right to present evidence and challenge the

---

[10] Doc. 1 ¶ 13.
[11] *Id.* ¶ 14.
[12] *Id.* ¶ 15.
[13] *Id.* ¶ 16.
[14] *Id.* ¶ 18.
[15] *Id.* ¶ 19.

charged offenses.[16] Hale further asserts that his treatment during the disciplinary process caused nightmares, PTSD, and depression, thus resulting in "cruel and unusual punishment" in violation of the Eighth Amendment.[17] Finally, Hale contends that his placement in disciplinary segregation prior to his UDC hearing for a minor offense—a circumstance that other inmates of different races and religions did not experience—represents a "Fourteenth Amendment" equal protection violation.[18]

Hale thus brings claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* against Defendants for these constitutional torts. However, because Hale's claims represent extensions of *Bivens* and those extensions are not warranted, the Court will dismiss Hale's complaint.

## II. STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[19] One

---

[16] *Id.* ¶ 20.
[17] *Id.* ¶ 21.
[18] *Id.* ¶ 22. The Court observes that the Fourteenth Amendment applies to state (rather than federal) officials and therefore will construe Hale's complaint as asserting a Fifth Amendment equal protection claim. The Fifth Amendment, unlike the Fourteenth, does not contain an express Equal Protection Clause, but the Supreme Court of the United States has "construed the Fifth Amendment to contain an equal protection guarantee." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316-17 (3d Cir. 2001) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991)); *see also Davis v. Passman*, 442 U.S. 228, 234-35 (1979). Fifth Amendment equal protection claims are examined coextensively with Fourteenth Amendment equal protection jurisprudence. *Abdul-Akbar*, 239 F.3d at 317.
[19] *See* 28 U.S.C. § 1915A(a).

4

basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[20] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[21]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[22] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[23] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[24]

---

[20] *Id.* § 1915A(b)(1).
[21] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[22] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[23] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[24] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[25] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[26] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[27] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[28] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[29]

Because Hale proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[30] This is particularly true when the *pro se* litigant, like Hale, is incarcerated.[31]

---

[25] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[26] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[27] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[28] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[29] *Iqbal*, 556 U.S. at 681.
[30] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[31] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III. DISCUSSION

Upon review of the various *Bivens* claims raised in Hale's complaint, it is clear that dismissal is required. Each of Hale's claims represents an extension of *Bivens*, and those extensions are not warranted under the present circumstances.

### A. *Bivens* Claims

In 1971, the Supreme Court of the United States held that, "even absent statutory authorization, it would enforce a damages remedy" to compensate individuals who experienced violations by federal officers of the Fourth Amendment's prohibition against unreasonable searches and seizures.[32] Subsequently, the Court extended the *Bivens* cause of action in two cases involving other types of constitutional violations. First, in *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the Court held that the Fifth Amendment's Due Process Clause provided an implied damages remedy to an administrative assistant claiming that a Congressman had discriminated against her based on gender. Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment implied a cause of action for damages against federal prison officials who had failed to provide adequate medical treatment to an asthmatic inmate.[33] "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in

---

[32] *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017); *Bivens*, 403 U.S. at 397.
[33] *See Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980).

which the Court has approved of an implied damages remedy under the Constitution itself."[34]

Over the years that followed, the Supreme Court has "consistently refused to expand *Bivens* actions beyond these three specific contexts."[35] The Supreme Court has specifically noted that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."[36]

In *Ziglar v. Abbasi*, the Court provided a "restrictive, two-step framework for courts to follow when analyzing *Bivens* claims."[37] First, courts must determine whether the case presents a "new context," *i.e.*, if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."[38] The Supreme Court has defined "new context" broadly,[39] explaining that "even a modest [*Bivens*] extension is still an extension."[40] A *Bivens* claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."[41]

If the case presents a new context, courts must then consider whether special factors counsel against extending the *Bivens* remedy.[42] If so, the court must reject

---

[34] *Abbasi*, 582 U.S. at 131; *see also Egbert v. Boule*, 596 U.S. 482, 492 (2022).
[35] *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020).
[36] *Abbasi*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).
[37] *Mack*, 968 F.3d at 317.
[38] *Id.* (alteration in original) (quoting *Abbasi*, 582 U.S. at 139).
[39] *See id.*
[40] *Abassi*, 582 U.S. at 147.
[41] *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020).
[42] *See Mack*, 968 F.3d at 317 (citing *Abbasi*, 582 U.S. at 136).

8

the requested extension.[43]  The Supreme Court has clarified that courts are required "to ask whether 'the Judiciary *is at least arguably less equipped* than Congress' to weigh the costs and benefits of a damages action."[44]  If the court "ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist.[45]  There may be many special factors, but two are "particularly weighty: the availability of an alternative remedial structure and separation-of-powers concerns."[46]  Indeed, the United States Court of Appeals for the Third Circuit has held that the existence of an alternative remedial structure—like the Federal Bureau of Prisons' Administrative Remedy Program (ARP)—is a "special factor" that can create a new context at step one of the two-step analysis.[47]

Hale's Fourth, Fifth, and Eighth Amendment claims present new contexts, and special factors counsel against extending the *Bivens* remedy here.  As to step one, none of the three Supreme Court cases recognizing an implied damages remedy align with Hale's complaint.  In other words, the circumstances in *Bivens*,

---

[43] *See id.* (citing *Hernandez*, 589 U.S. at 102).
[44] *Fisher v. Hollingsworth*, 115 F.4th 197, 205 (3d Cir. 2024) (quoting *Egbert*, 596 U.S. at 492).
[45] *Hernandez*, 589 U.S. at 102.
[46] *Mack*, 968 F.3d at 320 (internal quotation marks omitted).
[47] *See Muniz v. United States*, 149 F.4th 256, 263-64 (3d Cir. 2025); *Kalu v. Spaulding*, 113 F.4th 311, 327-28 (3d Cir. 2024).  *But see Muniz*, 149 F.4th at 266-67 (Restrepo, J., concurring) (disagreeing with approach taken in *Kalu v. Spaulding* and observing that Seventh, Ninth, and Tenth Circuits consider "alternative remedial structures" only at step two, not as part of step one, which better aligns with the Supreme Court's approach in *Egbert* and *Goldey v. Fields*, 606 U.S. 942 (2025)).

*Davis*, and *Carlson* are all materially different than Hale's. Although Hale relies on the same constitutional amendments as those cited in the *Bivens* trilogy, this is plainly not enough, as a *Bivens* claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."[48]

Indeed, Hale's Fourth, Fifth, and Eighth Amendment claims are all drastically different than those asserted in *Bivens*, *Davis*, and *Carlson*, respectively. Hale's Fourth Amendment claim concerns being held in the SHU during prison disciplinary proceedings (presumably an unreasonable seizure), whereas the claim in *Bivens* dealt with a warrantless, unreasonable search and seizure of a non-incarcerated citizen in his home. Hale's Fifth Amendment procedural due process claim involves alleged policy violations during prison disciplinary proceedings, while *Davis* concerned a claim of gender-based discrimination by a political figure. Hale's Eighth Amendment claim is based on his allegedly unlawful treatment by prison officials during disciplinary proceedings and his resulting emotional injuries, whereas *Carlson* concerned a claim of deliberate indifference to serious medical needs resulting in the death of an inmate. Finally, Hale's Fifth Amendment equal protection claim (being treated differently than prisoners of other races and religions by being held in the SHU during

---

[48] *Hernandez*, 589 U.S. at 103.

disciplinary proceedings for a minor offense) is substantially different than the gender-discrimination claim in *Davis*.

In sum, the facts in the case at bar bear little resemblance to *Bivens*, *Davis*, or *Carlson*, thus presenting new *Bivens* contexts. Moreover, even if Hale's claims mirrored the facts of the *Bivens* trilogy, the availability of the BOP's administrative remedy program—which was not in existence when those cases were considered by the Supreme Court—creates a new *Bivens* context here.[49]

The second step in the *Bivens* analysis asks whether special factors counsel against extending the *Bivens* remedy. The Court answers this question in the affirmative. Specifically, a *Bivens* extension is unwarranted here primarily because there are alternative remedies available.

As the Third Circuit has repeatedly noted, the availability of the BOP's administrative remedy program often provides an alternative to a federal *Bivens* lawsuit.[50] Through the administrative remedy process, federal prisoners "can alert the BOP to unconstitutional officer conduct and policies and prevent such constitutional violations from recurring."[51] Indeed, in this case, Hale was able to utilize the BOP's administrative remedy process to obtain a reversal and expungement of his disciplinary infraction and its sanctions. Moreover, even if

---

[49] *See Muniz*, 149 F.4th at 263-64; *Kalu*, 113 F.4th at 327-28.
[50] *See Muniz*, 149 F.4th at 264-65; *Dongarra v. Smith*, 27 F.4th 174, 181 (3d Cir. 2022); *Mack*, 968 F.3d at 320-21.
[51] *Mack*, 968 F.3d at 321.

Hale's attempt to resolve his dispute through the administrative process was ultimately unsuccessful, he had access to at least "some redress." Therefore, the Court finds—as in *Mack*—that the BOP's administrative remedy program offers a "convincing reason" to refrain from extending *Bivens* to claims like those raised by Hale.[52]

Hale's constitutional claims would extend *Bivens* to new contexts, yet special factors counsel against such extensions. The Court will therefore dismiss Hale's individual-capacity *Bivens* claims under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### B. Official Capacity Claims

Hale purports to sue all federal officers in their individual and official capacities.[53] However, a suit against a federal officer in his or her official capacity is akin to a suit against the United States itself.[54] Such suits are barred by sovereign immunity—and thus lack subject matter jurisdiction—unless the United States has expressly waived its immunity and consented to be sued.[55] Hale has not alleged or shown that the United States has waived its sovereign immunity for

---

[52] *See id.* (citations omitted); *see also Abbasi*, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); *Muniz*, 149 F.4th at 265 ("At bottom, Muniz's *Bivens* claim fails because an alternative remedy existed and was made available to him.").

[53] *See* Doc. 1 ¶ 11.

[54] *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395-96 (3d Cir. 2012) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).

[55] *See Treasurer of N.J.*, 684 F.3d at 395-96.

*Bivens* claims, and thus he has failed to establish subject matter jurisdiction for any official capacity *Bivens* claim asserted against Defendants.[56] Those claims, therefore, must be dismissed under 28 U.S.C. § 1915A(b)(2) for seeking monetary relief from an immune defendant and under Section 1915A(b)(1) as legally frivolous.

### C. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[57]  Here, leave to amend will be denied as futile.[58]  Hale seeks extensions of *Bivens* that are both judicially disfavored and unwarranted under the circumstances.  His official capacity claims, moreover, are legally frivolous, as the United States is plainly immune from his *Bivens* claims.

---

[56] *See Chinchello v. Fenton*, 805 F.2d 126, 130 n.4 (3d Cir. 1986); *Tucker v. Sec. Health & Human Servs.*, 588 F. App'x 110, 115 (3d Cir. 2014) (nonprecedential).

[57] *Grayson*, 293 F.3d at 114.

[58] *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation omitted)); *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss with prejudice Hale's complaint pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to plausibly state an individual-capacity claim for relief and because his official capacity claims are legally frivolous. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge